## UNITED STATES BANKRUPTCY COURT FOR THE
## WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| **JAMES STEWART LANGLEY, JR.,** | ) | **Case No. 21-50098-btf7** |
| | ) | |
| Debtor. | ) | |
| | ) | |
| **DANIEL J. CASAMATTA,** | ) | |
| **ACTING UNITED STATES TRUSTEE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | **Adversary No.** |
| | ) | |
| **JAMES STEWART LANGLEY, JR.,** | ) | |
| 11880 NE West St. | ) | |
| Cameron, MO 64429 | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT OBJECTING TO DISCHARGE

Plaintiff Daniel J. Casamatta, Acting United States Trustee for the Western District of
Missouri ("Plaintiff" or "United States Trustee"), brings this Complaint against Defendant James
Stewart Langley, Jr., ("Defendant" or "Debtor") objecting to his discharge.  In support of the
Complaint, the United States Trustee alleges as follows:

### Jurisdiction and Venue

1.    This is an adversary proceeding in which the Plaintiff is objecting to the discharge of the

Defendant.  The Court has jurisdiction over this adversary proceeding pursuant to 28

U.S.C. § 1334(b) and 11 U.S.C. § 727.

2.    This proceeding is constitutionally and statutorily core under 28 U.S.C. § 157(b)(2)(J).

3.    Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.    This Complaint is filed timely under Rule 4004(a) and (b) of the Federal Rules of

Bankruptcy Procedure.

## **Parties and Procedural History**

5.     Pursuant to his appointment under 28 U.S.C. § 581(a)(13), the Plaintiff is the United

States Trustee for Region 13, which includes the Western District of Missouri.

6.     The Plaintiff has standing and files this Complaint in his official capacity pursuant to 28

U.S.C. § 586(a) and 11 U.S.C. §§ 307 and 727(c).

7.     The Defendant is the Debtor in the above-captioned case, which was commenced by the

filing of a voluntary petition under Chapter 7 of the U.S. Bankruptcy Code on April 16,

2021.  The case remains pending in Chapter 7 as case number 21-50098 (the "Bankruptcy

Case").

8.     Bruce E. Strauss is the Chapter 7 trustee ("Trustee Strauss") in the Bankruptcy Case.

## **Factual Allegations**

### The Maximum Elite and Elite Equipment Cases in Texas

9.     Prior to filing bankruptcy, Maximum Elite Pipeline, LLC, ("Maximum Elite"), and Elite

Equipment Rental and Sales, LLC, ("Elite Equipment") leased, rented, and operated

equipment in the oil and gas industry throughout the United States – primarily in the

South and Southwest.

10.    Maximum Elite and Elite Pipeline were owned and operated by the Defendant.

11.    On January 9, 2020, Maximum Elite and Elite Pipeline filed voluntary Chapter 11

petitions in the Bankruptcy Court for the Northern District of Texas (collectively, the

"Elite Debtors" or the "Elite Cases").  These cases remain open and pending in the

Bankruptcy Court for the Northern District of Texas as case numbers 20-30288 and 20-

30289, respectively.

12.     The Defendant signed the petitions for the Elite Debtors as their managing member under penalty of perjury on January 9, 2020.

13.     On January 15, 2020, the Texas bankruptcy court approved joint administration of the Elite Cases.  The cases are jointly administered under case number 20-30288.

14.     On February 10, 2020, the Elite Debtors filed their Chapter 11 schedules and statements (collectively, the "Elite Schedules").

15.     The Defendant signed the Elite Schedules as the managing member of the Elite Debtors under penalty of perjury on February 10, 2020.

16.     In connection with the Elite Cases, the Defendant testified at a Chapter 11 § 341 meeting of creditors on March 2, 2020 ("the March 2 Meeting").

17.     At the March 2 Meeting, the Defendant was administered an oath, acknowledged the oath, and swore to tell the truth in his testimony.

18.     At the March 2 Meeting, the Defendant testified that that he was familiar with all of the information in the Elite Schedules and that the Elite Schedules were true and correct.

19.     At the March 2 Meeting, certain creditors appeared and asked questions about the location of dozens of pieces of equipment owned and operated by the Elite Debtors.

20.     Pre-bankruptcy, CNHI Industrial Capital America, LLC, ("CNHI") provided funding to Maximum Elite and Elite Equipment for over thirty pieces of equipment.

21.     A representative of CNHI questioned the Defendant at the March 2 Meeting about the location of the equipment on which CNHI had liens.

22.     In response to questions by CNHI's agent, the Defendant testified that some of the equipment was located at addresses in Midland, Texas; Sulphur, Louisiana; and Cameron or Pattonsburg, Missouri.  However, agents of CNHI did not find the equipment at any of

these locations.

23.    At the March 2 Meeting, the Defendant also testified that he sold several pieces of

equipment on which CNHI had liens.

24.    During 2020, several secured creditors, including but not limited to CNHI, filed motions

for relief from the automatic stay and/or motions for turnover in the Elite Cases, seeking

to locate and repossess their equipment.

25.    On July 2, 2020, CNHI filed a declaration of its representative attesting that CNHI was

unable to locate and recover over 20 pieces of its secured collateral from the Elite

Debtors.

26.    On July 31, 2020, the Texas bankruptcy court entered an order granting CNHI's motion

for relief from the automatic stay and ordered the Elite Debtors immediately to provide

CNHI with the precise location and to surrender the following equipment ("the July 31

Surrender Order"):

- Case Model 580N Tractor Serial Number LOJJGN580NCEC701473
- Caterpillar Model DP50D Forklift Serial Number AT19E80140
- Case IH Model 75C Farmall Tractor Serial Number ZFAL00784
- Case Model 580SN Tractor Loader Serial Number NJC752666
- Case Model CX210D Excavator Serial Number NHS7H1664

27.    The July 31 Surrender Order also ordered the Elite Debtors to provide CNHI with the

name, specific location, and telephone number of the parties to whom the following

equipment was sold:

- Bobcat T650 Compact Tractor Serial Number
- Bobcat T770 Tractor Loader Serial Number
- Terex GS3389 Genie SCIS / Serial Number 5232
- Terex GS 3369 Genie SCIS / Serial Number 5258
- Doosan D45S Forklift/Serial Number FDB03-1880-04072

28.    The July 31 Surrender Order also ordered the Defendant to appear at the court's next

status conference on August 20, 2020.

29.     On July 31, 2020, the Texas bankruptcy court converted the Elite Cases to cases under

Chapter 7, and Anne E. Burns was appointed Chapter 7 trustee for both cases ("Trustee

Burns").

30.     On August 20, 2020, Maximum Elite filed schedules and statements in the converted

Chapter 7 cases (collectively, the "Conversion Schedules").

31.     The Defendant signed the Conversion Schedules as the managing member of the Elite

Debtors under penalty of perjury on August 20, 2020.

32.     Trustee Burns convened and conducted Chapter 7 § 341 meetings of creditors on

September 8, 2020 (the "September 8 Meeting") and November 10, 2020 (the

"November 10 Meeting") at which the Defendant testified as the managing member of

the Elite Debtors.

33.     At the September 8 Meeting and the November 10 Meeting, the Defendant was

administered an oath, acknowledged the oath, and swore to tell the truth in his testimony.

34.     At the September 8 Meeting, the Defendant testified that he was familiar with all of the

information in the Conversion Schedules, and that the Conversion Schedules were true

and correct.

35.     On August 20, 2020, the Texas bankruptcy court held at status hearing on the July 31

Surrender Order.  The Defendant attended the August 20 hearing by telephone.

36.     After the hearing, the Texas bankruptcy court entered an order to show cause as to why

the Elite Debtors and the Defendant should not be held in contempt for failing to comply

with the July 31 Surrender Order ("the Show Cause Order").

37.     The Texas bankruptcy court held hearings on the Show Cause Order on August 27 and

September 9, 2020.  The Defendant appeared at both hearings by telephone.

38.     At the September 9 hearing, the court heard from counsel for five secured creditors about missing collateral.

39.     The court continued the hearing on the Show Cause Order to October 7, 2020, ordered the Elite Debtors and the Defendant to cooperate with efforts to locate the missing equipment, and ordered any secured creditor missing collateral to provide Trustee Burns with a list of the collateral.

40.     On October 6, 2020, Trustee Burns filed with the court a list of twenty pieces of equipment missing from the Elite Cases.

41.     On October 7, the Texas bankruptcy court held its last status hearing on the July 31 Surrender Order and the Show Cause Order.

42.     After hearing testimony from witnesses and arguments of counsel on October 7, the Texas bankruptcy court found that the Defendant had failed to comply with the July 31 Surrender Order, had made false oaths, and had engaged in the concealment of assets.

43.     The Defendant still has not produced the missing equipment required by the July 31 Surrender Order.

44.     The Defendant never produced records or any detailed information about the sale of equipment on which CNHI had liens.

45.     Maximum Elite's SOFA disclosed payments or transfers to the Defendant of $767,938.12 within the year prior to filing.

46.     Maximum Elite's SOFA also disclosed transfers to Andrea Davis of $76,454 in the year prior to filing.

47.     Davis was an employee of the Elite Debtors.  She also was the Defendant's girlfriend.

48.   At one time, Davis was the titular owner of the Maximum Elite, but Davis did not invest any capital in Maximum Elite.

49.   The Defendant has testified that he and Davis agreed to name her the owner of Maximum Elite for the purpose of obtaining contracts that give preference to women-owned businesses.  The Defendant also has testified that he and Davis had an understanding that he was the owner of Maximum Elite.

50.   On February 19, 2019, Davis and the Defendant executed a document they titled "Membership Interest Assignment and Interest Power" by which she assigned whatever interest she owned in Maximum Elite to the Defendant for $10.00.  The Defendant signed the instrument as "President" of Maximum Elite.

51.   On November 18, 2018, Davis purchased real property located at 11880 NE West Street, Cameron, Missouri (the "Cameron Property").

52.   On July 10, 2019, Davis quitclaimed the Cameron Property to the Defendant.

53.   The Defendant has lived in the Cameron Property since November 2018.

54.   The Defendant admitted that he purchased the Cameron Property with $500,000 he took from Maximum Elite.

55.   The Defendant claimed that he took these funds in repayment of loans he made to Maximum Elite, although he also admits he has no records of these loans other than the bank statements of Maximum Elite.

56.   The Defendant's bank records reveal that in the five-month period between February and July 2020, while the Elite Cases were pending in Chapter 11, the Defendant transferred over $120,000 from the Maximum Elite accounts to his personal accounts.

57.   On March 16, 2021, Trustee Burns sued the Defendant for fraudulent transfers.

58.    On April 16, 2021, the Defendant filed a voluntary Chapter 7 petition in the Bankruptcy

Court for the Western District of Missouri.

<u>The Chapter 7 Bankruptcy in the Western District of Missouri</u>

59.    With the petition, the Defendant filed bankruptcy schedules, a Statement of Financial

Affairs ("SOFA"), a Statement of Intention, and a Statement of Current Monthly Income,

all of which were executed under penalty of perjury by the Defendant on April 16, 2021

(collectively, "the Original Schedules").

60.    In connection with this Bankruptcy Case, the Defendant testified at a § 341 meeting of

creditors on May 14, 2021 (the "May 14 Meeting") and at a continued meeting of

creditors on June 11, 2021 (the "June 11 Meeting").[1]

61.    At the May 14 Meeting and again at the June 11 Meeting, the Defendant was

administered an oath, acknowledged the oath, and swore to tell the truth in response to

the questions asked by Trustee Strauss.

62.    At the May 14 Meeting, the Defendant testified that he read and reviewed his Original

Schedules before he signed them, that he was familiar with all of the information they

contained, and that his Original Schedules were true and correct.

63.    Prior to the May 14 Meeting, the Defendant submitted to Trustee Strauss a Trustee

Questionnaire signed under penalty of perjury by the Defendant on April 18, 2020.

64.    In response to Questions 8(a) – (i) of the Trustee Questionnaire, the Defendant attested

that his Original Schedules were true and correct, that he was unaware of any omissions,

and that he listed all of his assets on the Original Schedules.

65.    On June 10, 2021, the Defendant filed amended Schedules A/B and C (the "Amended

---

[1] Since June 11, 2021, the Defendant's meeting of creditors has been continued without appearance by Trustee
Strauss.  The meeting of creditors has not been concluded.

Schedules") and an amended Statement of Financial Affairs (the "Amended SOFA").

66.   The Defendant executed the Amended Schedules and the Amended SOFA under penalty
      of perjury on June 9, 2021.

67.   On August 24, 2022, counsel for the Plaintiff and Trustee Strauss took the Defendant's
      examination under Rule 2004 of the Federal Rules of Bankruptcy Procedure.

68.   At the Rule 2004 examination, the Defendant was administered an oath, acknowledged
      the oath, and swore to tell the truth in response to the questions asked by counsel for the
      Plaintiff and Trustee Strauss.

69.   At the Rule 2004 examination, the Defendant testified that he read and reviewed his
      Original Schedules, the Amended Schedules, and the Amended SOFA before he signed
      them, that he was familiar with the information they contained, and that his Original
      Schedules, as amended by the Amended Schedules and Amended SOFA, were true and
      correct.

70.   At the Rule 2004 examination, the Defendant testified that he did not review his bank
      statements or other bank account information prior to filing bankruptcy to ensure that his
      bankruptcy schedules and statements were accurate.

The Undisclosed Assets

71.   The Defendant's Original Schedules do not disclose his ownership of any vehicles.

72.   On April 29, 2021, creditor TD Auto Finance, LLC, filed a Motion for Relief from Stay,
      alleging that the Defendant jointly owns a 2019 Ford F-450 Crew Cab truck (the "Ford
      Truck") with Maximum Elite.  The creditor attached to the motion a sales and loan
      agreement that indicates that the Defendant and Maximum Elite Pipeline jointly
      purchased the vehicle on July 2, 2019, from Mike Willis Ford in Sulphur, Louisiana, for

$98,362.38. The creditor also attached a copy of a Texas title for the vehicle, indicating the truck is jointly owned by the Defendant and Maximum Elite.

73.    The Trustee questioned the Defendant about the Ford Truck at the May 14 Meeting.  The Defendant first testified that the truck was located at a residence in Florida allegedly owned by his girlfriend, Dalal Perry Poche.  He then testified that it was located at a shop owned by a friend in Florida. The Defendant asserted he did not recall how the vehicle ended up in Florida.

74.    The Defendant did not list the Ford Truck in his Original Schedules or his Amended Schedules.

75.    The Defendant's Original Schedules do not disclose ownership of a gun safe.

76.    At the May 14 Meeting, in response to questioning by Trustee Strauss, the Defendant testified that he did not own a gun safe.  He further testified that the gun safe he previously owned was burned in a fire.

77.    However, upon further questioning by Trustee Strauss, the Defendant admitted that the gun safe he testified was "burned in a fire" was actually still located at his home.

78.    In response to additional questions by Trustee Strauss, the Defendant admitted that, in fact, he had three gun safes in his home, two owned by him and one owned by Willis Perry.

79.    W.C. "Willis" Perry ("Perry") is the father of the Defendant's girlfriend, Dalal Perry Poche ("Poche").[2]  Both Perry and Poche live with the Defendant.

80.    In the Amended Schedules, the Defendant disclosed two gun safes with a total value of

---

[2] At the time of filing, the Defendant was not yet engaged to Poche.  Subsequent to the filing of the Bankruptcy Case, the Defendant and Poche became engaged, and the Defendant gave her a $20,000 diamond ring.  The Defendant testified that the funds for the purchase of the engagement ring came from Perry.  Poche is referred to in this complaint variously as the Defendant's girlfriend or the Defendant's fiancé.

$2,000.

81.   Neither the Defendant's Original Schedules nor Amended Schedules list ownership of
any hunting leases.

82.   At the August 24 Rule 2004 examination, counsel for the Plaintiff questioned the
Defendant about payments he made to HP Land Co. from his Chase bank account ending
x5708 for $11,370 and $9,360 on October 21, 2020, and October 23, 2020, respectively.

83.   The Defendant testified that these payments were for one-year hunting leases of two
separate parcels of real property near Cameron, Missouri.

84.   The Defendant further testified that the leases ran from September 2020 through
September 2021.

85.   These two hunting leases were not disclosed in the Defendant's Original Schedules or his
Amended Schedules.

The Undisclosed Transfers

86.   The Defendant's Original Schedules do not disclose the pre-petition transfer or sale of
any guns within the year prior to filing.

87.   The Defendant's Original Schedules also do not disclose that he holds, controls, or is
storing any property for another.

88.   At the May 14 Meeting, Trustee Strauss asked the Defendant if he owns any guns.  The
Defendant testified, "[t]here's a lot of guns [in the house but,] I don't have none no
more."

89.   Upon further questioning by Trustee Strauss, the Defendant admitted the presence of as
many as 30 or 40 guns in his house but stated that only "1 or 2 guns" belong to him.

90.   When Trustee Strauss asked the Defendant what happened to the guns he previously

owned, the Defendant testified that, prior to filing, he pawned a number of guns at American Gold Mine, a pawn shop in St. Joseph, Missouri.

91. When Trustee Strauss asked whether those guns were still present in his home, the Defendant testified that Willis Perry purchased the guns the Defendant pawned at American Gold Mine and deposited the guns in a safe in the Defendant's home.

92. In the Amended SOFA, the Defendant disclosed his transfer of guns valued at $20,000 to American Gold Mine in 2020.

93. Records obtained from American Gold Mine show this transfer took place in June 2020.

94. The Defendant's Original Schedules do not disclose any payments, transfers, or gifts of more than $600 to any insiders within the two years prior to his bankruptcy filing.

95. In response to Question 21(a) –(e) of the Trustee Questionnaire, the Defendant attested that he had not transferred, sold, given away, or gifted any asset or money to any relative within the last two years prior to filing.

96. The Defendant's bank records show that he made multiple transfers to his then-girlfriend and business partner Andrea Davis from his Chase bank account ending x5708 totaling $11,550 in the year prior to filing bankruptcy.

97. These transfers to Andrea Davis were not disclosed in the Defendant's Original Schedules or on his Amended SOFA.

98. The Defendant's bank records show that he made multiple transfers to his current girlfriend, Dalal Poche, from his Chase bank account ending x5708 totaling $13,568, in the year prior to filing bankruptcy.

99. At the Rule 2004 examination, the Defendant testified that these transfers to Poche were made to repay loans to him from Poche.

100.    These transfers to Poche were not disclosed in the Defendant's Original Schedules or on his Amended SOFA.

101.    The Defendant's bank records show that he made multiple transfers to his father, James S. Langley, Sr., from his Chase bank account ending x5708 totaling $8,970 in the year before filing bankruptcy.

102.    At the Rule 2004 examination, the Defendant testified that the transfers to James S. Langley, Sr., were repayments for loans from his father.

103.    The transfers to James S. Langley, Sr., were not disclosed in the Defendant's Original Schedules or on his Amended SOFA.

104.    At the Rule 2004 examination, the Defendant testified that he transferred $6,500 to his daughter Megan Graffa in July 2019 from his Chase bank account ending x5708 for the purchase of an automobile for her.

105.    This transfer or gift to the Defendant's daughter Megan Graffa was not disclosed in the Defendant's Original Schedules or his Amended Schedules.

106.    The Defendant's bank records show that he made multiple transfers to his son Buddy Langley from his Chase bank account ending x5708 totaling $2,284 in the year before filing bankruptcy.

107.    These transfers or gifts to the Defendant's son Buddy Langley were not disclosed in the Defendant's Original Schedules or his Amended Schedules.

108.    The Defendant's bank records show that he made multiple transfers to Hunter Guillory, the son of Dalal Poche, from his Chase bank account ending x5708 totaling $1,150 in the year before filing bankruptcy.

109.    These transfers or gifts to Hunter Guillory were not disclosed in the Defendant's Original

Schedules or his Amended Schedules.

110. On August 7, 2021, while the Bankruptcy Case was pending, the Defendant transferred the Cameron Property to his fiancé Dalal Poche.

111. At the time of the transfer, the Cameron Property was property of the bankruptcy estate.

112. The transfer of the Cameron Property while the Bankruptcy Case was pending was not disclosed to or authorized by Trustee Strauss.

113. Trustee Strauss did not learn of the transfer of the Cameron Property until it was discovered by counsel for the Plaintiff while preparing for the Rule 2004 examination on August 23, 2022, over a year after the transfer.

The "Claim" Against Maximum Elite

114. The Defendant's Original Schedules and Amended Schedules list as an asset a claim against Maximum Elite for $4.6 million for loans to the company and for unpaid wages.

115. Despite the fact that he signed the Elite Schedules and the Conversion Schedules under penalty of perjury, the Defendant did not disclose his claim in the Elite Schedules or the Conversion Schedules.

116. The Defendant also did not disclose his personal claim against the Elite Debtors in his testimony at any of the meetings of creditors held in the Elite Cases.

117. The Defendant has not filed a proof of claim against the Elite Debtors in the Elite Cases.

118. The Defendant did not assert any claim against the Elite Debtors until after he was sued by Trustee Burns.

Undisclosed and Unexplained Income or Loss of Income

119. For the years 2019, 2020, and 2021 through the filing date of April 16, 2021, the Defendant's bank records show total deposits of $1,252,650.82 into his bank accounts.

120.   The Maximum Elite SOFA discloses payments to the Defendant from Maximum Elite of $767,938 in 2019.

121.   The Defendant's bank statements show total deposits in 2019 of $946,586, including approximately $700,000 from Maximum Elite.

122.   The Defendant's Original SOFA discloses gross income of $207,938 in 2019.

123.   The Defendant's Amended SOFA discloses gross income of $489,733 for 2019.

124.   The Defendant reported no income from Maximum Elite on his 2019 federal income tax return.

125.   At the Rule 2004 examination, the Defendant testified that he was aware he had income from Maximum Elite in 2019 but he did not report income from Maximum Elite on his 2019 income tax return because Trustee Burns did not send him a W-2.

126.   The Defendant's bank account records show total deposits of $276,980 in 2020.

127.   The Defendant's Original SOFA discloses gross income of $0.00 for 2020.

128.   The Defendant's Amended SOFA discloses gross income of $464,805 for 2020.

129.   The Defendant's bank account records show total deposits of $29,084.82 in 2021 through the filing date of April 16, 2021.

130.   The Defendant's Original and Amended SOFA disclose gross income of $5,000 for 2021 through the filing date of April 16, 2021.

131.   In the two-year period prior to filing, the Defendant withdrew over $70,000 in cash from ATMs.

132.   At the Rule 2004 examination, counsel for the Plaintiff and Trustee Strauss questioned the Defendant about numerous withdrawals of cash from his bank accounts within the two years prior to filing bankruptcy.

133.   The Defendant could not provide explanations for these withdrawals, but he testified that he could produce records to explain what happened to this money.

134.   After the Rule 2004 examination, on August 29, 2022, counsel for the Plaintiff wrote to the counsel for the Defendant demanding turnover of all records the Defendant testified he would produce to explain his financial condition, including the following:

(a)  Copies of checks, deposit slips with deposit detail (checks, etc.), and withdrawal slips for accounts ending x9952, x5709, x 5091, and x5906 for January 1, 2019 – December 31, 2021.

(b)  Explanation of all withdrawals of $1,000 or more from Mr. Langley's accounts x9952, x5709, x 5091, and x5906 for the period January 1, 2019 – December 31, 2021.

(c)  Explanation of the source of funds of all cash deposits of $1,000 or more into Mr. Langley's accounts x9952, x5709, x 5091, and x5906 for the period January 1, 2019 – December 31, 2021.

(d)  Identification of accounts owners of accounts x6388, x6715, x8338, and x9319.

(e)  Production of copies of all account statements for any accounts with Paypal, Venmo, and any other peer-to-peer payment applications for January 1, 2019-December 31, 2021.

(f)  Identification of all credit cards to which Langley made payments by financial institution, name(s) on account, and account number and production of statements for such accounts for calendar years 2019, 2020, and 2021.

135.   The Defendant could not or would not respond to any of these requests.

## COUNT I
### Objection to Discharge under 727(a)(4)

136.   Paragraphs 1-135 of this Complaint are incorporated by reference.

137.   When the Defendant testified at the May 14 Meeting that his schedules and statements

were true and correct, the Defendant knowingly and fraudulently, in connection with the bankruptcy case, made a false oath or account.

138. When, in response to Questions 8(a) – (i) of the Trustee Questionnaire, the Defendant attested that his Original Schedules were true and correct, that he was unaware of any omissions, and that he listed all of his assets on the Original Schedules, the Defendant knowingly and fraudulently, in connection with the bankruptcy case, made a false oath or account.

139. When, in response to Question 21(a) –(e) of the Trustee Questionnaire, the Defendant attested that he had not transferred, sold, given away, or gifted any asset or money to any relative within the last two years prior to filing, the Defendant knowingly and fraudulently, in connection with the bankruptcy case, made a false oath or account.

140. When the Defendant testified at the Rule 2004 examination on August 24, 2022, that his schedules and statements were true and correct, the Defendant knowingly and fraudulently, in connection with the bankruptcy case, made a false oath or account.

141. When the Defendant failed to disclose the two gun safes in his Original Schedules, the Defendant knowingly and fraudulently, in connection with the bankruptcy case, made a false oath or account.

142. When the Defendant failed to disclose the Ford Truck in his Original Schedules and his Amended Schedules, the Defendant knowingly and fraudulently, in connection with the bankruptcy case, made a false oath or account.

143. When the Defendant failed to disclose his ownership of two hunting leases with H.P. Land Co., in his Original Schedules and his Amended Schedules, the Defendant knowingly and fraudulently, in connection with the bankruptcy case, made a false oath or account.

144.   When the Defendant listed a claim against Maximum Elite in the amount $4.6 million in his Original Schedules and his Amended Schedules, the Defendant knowingly and fraudulently, in connection with the bankruptcy case, made a false oath or account.

145.   When the Defendant failed to disclose the transfer of the guns in June 2020 to American Gold Mine in his Original Schedules, the Defendant knowingly and fraudulently, in connection with the bankruptcy case, made a false oath or account.

146.   When the Defendant failed to disclose the transfer of monies to Andrea Davis in the year prior to filing in his Original Schedules and his Amended Schedules, the Defendant knowingly and fraudulently, in connection with the bankruptcy case, made a false oath or account.

147.   When the Defendant failed to disclose the transfer of monies to Dalal Perry Poche in the year prior to filing in his Original Schedules and his Amended Schedules, the Defendant knowingly and fraudulently, in connection with the bankruptcy case, made a false oath or account.

148.   When the Defendant failed to disclose the transfer of monies to James S. Langley, Sr., in the year prior to filing in his Original Schedules and his Amended Schedules, the Defendant knowingly and fraudulently, in connection with the bankruptcy case, made a false oath or account.

149.   When the Defendant failed to disclose the transfer of monies to his daughter Megan Graffa in the year prior to filing in his Original Schedules and his Amended Schedules, the Defendant knowingly and fraudulently, in connection with the bankruptcy case, made a false oath or account.

150.   When the Defendant failed to disclose the transfer of monies to his son Buddy Langley in

the year prior to filing in his Original Schedules and his Amended Schedules, the Defendant knowingly and fraudulently, in connection with the bankruptcy case, made a false oath or account.

151.   When the Defendant failed to disclose the transfer of monies Hunter Guillory, the son of his fiancé Dalal Poche, in the year prior to filing in his Original Schedules and his Amended Schedules, the Defendant knowingly and fraudulently, in connection with the bankruptcy case, made a false oath or account.

152.   When the Defendant listed his gross income for 2019 in his Original Schedules as $207,938, the Defendant knowingly and fraudulently, in connection with the bankruptcy case, made a false oath or account.

153.   When the Defendant listed his gross income for 2019 in his Amended SOFA as $489,733, the Defendant knowingly and fraudulently, in connection with the bankruptcy case, made a false oath or account.

154.   When the Defendant listed his gross income for 2020 in his Original Schedules as $0.00, the Defendant knowingly and fraudulently, in connection with the bankruptcy case, made a false oath or account.

155.   When the Defendant listed his gross income for 2021 through the filing date of April 16, 2021, as $5,000 in his Original Schedules and the Amended SOFA, the Defendant knowingly and fraudulently, in connection with the bankruptcy case, made a false oath or account.

156.   As provided in 28 U.S.C. § 1746, the Defendant's certifications on his schedules and statements have the force and effect of an oath.

157.   Each of these false oaths and accounts are material to the administration of the

Defendant's bankruptcy estate or concern his financial affairs.

158.  Each of these false oaths and accounts, standing alone, is sufficient grounds to deny the

Defendant's discharge.

WHEREFORE, the Plaintiff requests the Court's order and judgment denying the

discharge of Defendant James S. Langley, Jr., under 11 U.S.C. § 727(a)(4)(A) for knowingly

and fraudulently, or with reckless regard for the truth, making a false oath or account in, or in

connection with his bankruptcy case, and for such further relief as may be just and proper.

**COUNT II**
**Objection to Discharge under § 727(a)(2)(B)**

159.  Paragraphs 1-158 of this Complaint are incorporated by reference.

160.  When the Defendant concealed his ownership of the Ford Truck, he did so with the intent

to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of

the property under Title 11.

161.  When the Defendant concealed his ownership of two gun safes, he did so with the intent to

hinder, delay, or defraud a creditor or an officer of the estate charged with custody of the

property under Title 11.

162.  When the Defendant concealed his ownership of two hunting leases, he did so with the

intent to hinder, delay, or defraud a creditor or an officer of the estate charged with

custody of the property under Title 11.

163.  The Ford Truck, the two guns safes, and the hunting leases were property of the estate and

were concealed after the date of filing the petition.

164.  When the Defendant transferred the Cameron Property, which is property of the estate, to

his fiancé Dalal Poche after the date of filing, he did so with the intent to hinder, delay, or

defraud a creditor or an officer of the estate charged with custody of the property under Title 11.

WHEREFORE, the Plaintiff requests the Court's order and judgment denying the discharge of Defendant James S. Langley, Jr., under 11 U.S.C. § 727(a)(2)(B) for concealing and transferring property of the estate after the date of the filing of the petition, with intent to delay, hinder, or defraud a creditor or the Trustee, and for such further relief as may be just and proper.

## COUNT III
### Objection to Discharge under 727(a)(3)

165. Paragraphs 1-164 of this Complaint are incorporated by reference.

166. The Defendant has failed to explain satisfactorily what happened to the $70,000 he withdrew from his bank accounts in the two years prior to filing bankruptcy.

167. Accordingly, the Defendant has failed to explain satisfactorily a loss or deficiency of assets to meet his liabilities.

WHEREFORE, the Plaintiff requests the Court's order and judgment denying the discharge of Defendant James S. Langley, Jr., under 11 U.S.C. § 727(a)(5) for having failed to explain satisfactorily, before determination of denial of discharge, any loss or deficiency of assets to meet his liabilities, and for such further relief as may be just and proper.

## COUNT IV
### Objection to Discharge under 727(a)(3)

168. Paragraphs 1-167 of this Complaint are incorporated by reference.

169. By failing to keep records related to his withdraw of $70,000 from his bank accounts in the two years before he filed bankruptcy, the Defendant has concealed, destroyed, mutilated, falsified, or failed to keep or preserve recorded information including books, documents, records, and papers from which his financial condition might be ascertained.

170.    The Defendant's actions or failure to act are not justified under all of the circumstances of

this case.

WHEREFORE, the Plaintiff requests the Court's order and judgment denying the

discharge of Defendant James S. Langley, Jr., under 11 U.S.C. § 727(a)(3) for having concealed,

destroyed, mutilated, falsified, or failed to keep or preserve recorded information, including

books, documents, records, and papers, from which his financial condition might be ascertained,

and for such further relief as may be just and proper.

## COUNT V
### Objection to Discharge under 727(a)(7)

171.    Paragraphs 1-170 of this Complaint are incorporated by reference.

172.    Defendant is an insider of Maximum Elite and Elite Equipment.

173.    The Defendant transferred, removed, or concealed equipment that was property of the

Elite Debtors' estates within one year before the date of filing the Elite Cases or after the

date of the filing of the Elite Cases.

174.    The Defendant's act of transferring, removing, or concealing equipment that was property

of the estates of the Elite Debtors was done with the intent to hinder, delay, or defraud

creditors or Trustee Burns.

175.    The Defendant's act of transferring, removing, or concealing equipment that was property

of the estates of the Elite Debtors was done within one year of filing the petition in this

Bankruptcy Case or during this Bankruptcy Case.

176.    The Defendant transferred, removed, or concealed at least $120,000 that was property of

the estates of the Elite Debtors when he transferred funds from the Elite Debtors' accounts

to his own accounts while the cases were pending in Chapter 11.

177.    The Defendant's act of transferring, removing, or concealing $120,000 that was property

of the estates of the Elite Debtors was done with the intent to hinder, delay, or defraud

creditors or Trustee Burns.

178.    The Defendant's act of transferring, removing, or concealing $120,000 that was property

of the estates of the Elite Debtor was done within one year of filing the petition in this

Bankruptcy Case or during this Bankruptcy Case.

179.    The Defendant has concealed, destroyed, mutilated, falsified, or failed to keep or

preserved books, documents, records, and papers that would explain what happened to the

equipment that was property of the Elite Debtors.

180.    The Defendant's actions described in paragraph 179 were not justified under the

circumstances.

181.    The Defendant's actions described in paragraph 179 occurred within one year of filing the

petition in this Bankruptcy Case or during this Bankruptcy Case.

182.    When the Defendant testified at the September 8 Meeting that the Conversion Schedules

were true and correct, he knowingly and fraudulently committed a false oath or account.

183.    The false oath described in paragraph 182 was committed within one year of the filing of

the petition in this Bankruptcy Case.

184.    In the Elite Cases, there is a loss or deficiency of assets to meet the liabilities of the Elite

Debtors.

185.    The Defendant has failed to explain satisfactorily what happened to the equipment missing

from the Elite Cases.

186.    The Defendant has failed to explain satisfactorily what happened to all the monies he

transferred or removed from the bank accounts of the Elite Debtors.

187.    The Defendant's failure to explain what happened to the missing equipment and the

transferred monies occurred within one year of filing of the petition in this Bankruptcy

Case or during this Bankruptcy Case.

188.   The Defendant refused to obey lawful orders of the Texas bankruptcy court.

189.   The Defendant's refusal to obey lawful orders of the Texas bankruptcy court occurred

within one year of the filing of the petition in this Bankruptcy Case or during this

Bankruptcy Case.

WHEREFORE, the Plaintiff requests the Court's order and judgment denying the

discharge of Defendant James S. Langley, Jr., under 11 U.S.C. § 727(a)(7) for having committed

acts specified in § 727(a)(2), (3), (4), (5), and (6) on or within one year before the date of filing

the petition in this Bankruptcy Case or during this Bankruptcy Case, in connection with another

case filed under the Bankruptcy Code, and for such further relief as may be just and proper.

WHEREFORE, for all the reasons stated above, the United States Trustee prays for an

order and judgment denying the discharge of Defendant James S. Langley, Jr., pursuant to 11

U.S.C. § 727(a), and for such further relief as the Court may deem just and proper.

Date: January 10, 2023                    Respectfully submitted,

                                          DANIEL J. CASAMATTA
                                          ACTING UNITED STATES TRUSTEE

                                          By: */s/ Sherri L. Wattenbarger*
                                          SHERRI L. WATTENBARGER
                                          KS Bar # 16401
                                          Trial Attorney
                                          Office of the U.S. Trustee
                                          400 East 9th St., Ste 3440
                                          Kansas City, MO 64106
                                          Telephone: (816) 512-1940
                                          Fax: (816) 512-1967
                                          Email: sherri.wattenbarger@usdoj.gov